UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM E. DOYLE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:15 CV 656 DDN |
| ) | |
| DAVID SCHMITT, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This action is before the court upon the petition of Missouri state prisoner William E. Doyle for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

Petitioner Doyle is confined at the Southeast Missouri Mental Health Center in the Sexual Offender Rehabilitation and Treatment Services Unit (SORTS) in Farmington, Missouri. Petitioner pled guilty in the Circuit Court of Jefferson County to statutory rape in the first degree on October 16, 2001, and on that day was sentenced to 12 years in the Missouri Department of Corrections. *See State of Missouri v. William E. Doyle*, No. 23 CR 301-1084 (Circuit Court of Jefferson County, Missouri, October 16, 2001); https://www.courts.mo.gov/casenet/cases/ searchDockets.do. On April 8, 2002, the Circuit Court sustained the state's motion to dismiss petitioner's motion for post-conviction relief. *See William E. Doyle v. State of Missouri*, No. 23 CV 302-0385 (Circuit Court of Jefferson County, April 8, 2002); https://www.courts.mo.gov/ casenet/cases/searchDockets.do.

On June 17, 2011, the state of Missouri filed a petition for the civil confinement of petitioner Doyle under Revised Statute of Missouri §§ 632.480-632.513 (regarding civil commitment of a sexually violent predator (SVP)). (Doc. 12-2 at 14-26). On July 14, 2011, following a hearing, the Probate Division of the Circuit Court found probable cause to believe petitioner was an SVP under § 632.480(5). (Doc. 12-2 at 7).

On March 13, 2013, after a trial in the Probate Division of the Circuit Court of St. Louis County, a jury unanimously found by clear and convincing evidence that petitioner was an SVP, and the Circuit Court thereupon ordered him committed to the custody of the Director of the Department of Mental Health for control, care, and treatment "until such time as [petitioner's] mental abnormality has so changed that he is safe to be at large." (Doc. 12-2 at 198). On June 17, 2013, the Circuit Court denied petitioner's motion for judgment notwithstanding the judgment of the jury. (*Id.* at 235).

On direct appeal, petitioner argued that the Circuit Court erred: (1) by denying his motion to prohibit the state from hiring a private psychiatrist or psychologist to testify at his trial; (2) by committing him to indefinite, secure confinement in the custody of the Missouri Department of Mental Health, because the evidence was insufficient to sustain the state's burden of proof that he was likely to engage in predatory sexual violence if not confined and that he had a mental abnormality, both grounds in part in violation of the Fourteenth Amendment to the Constitution of the United States. (Doc. 12-3 at 20-23).

The Missouri Court of Appeals affirmed the jury's verdict and the commitment order. (Doc. 12-5 at 1-14); *In the Matter of the Care and Treatment of William Doyle*, 428 S.W.3d 755, 756 (Mo. Ct. App. 2014) (*In re Doyle*). In its opinion, the appellate court described the facts, viewed in the light most favorable to the jury verdict, as follows:

> Appellant was born in 1974. His parents divorced when he was young, and his mother's boyfriend sexually abused him. He also had sexual interactions with babysitters when he was five years old.
>
> In 1991, Appellant sexually molested his half-sister, Betty, who was six years old at the time. An older sister came into the room and saw Appellant naked from the waist down and Betty with very little clothing.

During an investigation following this, Betty reported several incidents of Appellant molesting her, which included him touching her, lying on top of her, asking her to touch his penis, touching her anus with his penis, and ejaculating. The day Appellant's older sister walked in and saw them, Appellant continued molesting Betty after she left. He would promise Betty that he would to take her to McDonald's if she touched his penis, and he threatened to beat her up if she told anyone.

Appellant pled guilty to sexual abuse in the first degree for the molestation of Betty. He received a suspended imposition of sentence, five years of probation, and he was required to participate in sex offender treatment. He participated to some extent in this treatment and had probation extended because of an unrelated arrest. While on probation, he was 18 years old and was living with a 15–year–old girl whom he impregnated and had a child. Appellant completed probation in June 1997.

Appellant was investigated again in 2000 for allegations of sexual abuse against an eight-year-old girl, Paige. Appellant was living with his girlfriend at the time, and his girlfriend was Paige's babysitter. One day, Paige's mother came to drop her off with Appellant's girlfriend, who was not home. Paige did not want to go in the house with only Appellant home, and she eventually admitted to her mother that it was because Appellant had touched her vaginal area. In a forensic interview conducted by the Division of Family Services (DFS) in October of 2000, Paige reported that Appellant had touched her several times since she was six years old. On October 27, 2000, Appellant denied any sexual contact with Paige in his interview with DFS. DFS eventually made a finding of probable cause during its investigation. The State of Missouri obtained an arrest warrant in 2001 regarding the incidents with Paige.

However, at that time Appellant was in prison for a separate sexual abuse case. In November of 2000, while the investigation regarding Paige was still open, Appellant was found to have engaged in sexual activity with another child, Audrey, who was 13 years old. Audrey was Appellant's father's wife's niece, and they met at a family gathering. Appellant was 26 years old at the time. They had sexual intercourse twice that day and continued having sexual intercourse several times over the next month. Audrey's mother discovered their sexual activity by listening to a telephone conversation Audrey had with Appellant. Appellant was convicted of statutory rape in both St. Louis County and Jefferson County for having sexual intercourse with Audrey. He was sentenced to 10 years in St. Louis County and 12 in Jefferson County, to be served concurrently in the Missouri Department of Corrections.

Appellant was in prison from 2001 through 2009, during which he completed the Missouri Sex Offender Program (MOSOP). He received one sexual misconduct violation during that time for groping the breast of a female visitor and allowing her to touch his groin. Appellant was released on parole in 2009. He committed several rule violations and eventually his parole was revoked and he returned to prison. His rule violations included a delay in beginning sex offender treatment, failing to attend two assigned therapy sessions, having cell phone numbers and email addresses that he did not disclose to his parole agent, and having unauthorized social media accounts. Appellant was also evasive in his answers during treatment while on parole, and he had several relationships with women that he did not disclose during that time.

Four experts testified regarding Appellant's status as an SVP. Dr. Kimberly Weitl, a clinical psychologist employed by the State of Missouri in MOSOP, had screened Appellant's records in 2009 when he was released on parole. At that time, she considered Appellant to have a sexual disorder and a high risk of reoffending. However, she did not find a mental abnormality at the time, and Appellant was released on parole because he had completed MOSOP, which typically mitigates the risk of reoffending.

Dr. Weitl had originally diagnosed Appellant with paraphilia, a general category of deviant sexual behavior. However, she changed this diagnosis to pedophilia when she learned that Appellant's first victim was younger than he had reported and the abuse went on for a longer period of time.[2] [Footnote 2: Pedophilia requires a finding that the abuse went on for at least six months.] She found that he had not integrated the principles he had learned in treatment. In addition to independently considering Appellant's risk factors including his specific behavior toward the victims and his actions going through treatment, Dr. Weitl used two diagnostic tools in evaluating Appellant the second time, the Static–99 and the Minnesota Sex Offender Screening Tool Revised (MnSOST). She scored a three or four on the Static–99, and a 14 on the MnSOST; the 14 MnSOST score is in a subcategory of high risk for reoffending. Dr. Weitl testified she believed Appellant was more likely than not to reengage in predatory acts of sexual violence if not confined to a secure facility.

The State also sought a second opinion from Dr. Angeline Stanislaus, a forensic psychiatrist. Dr. Stanislaus reviewed all reports and records related to Appellant, but Appellant did not consent to an interview with her. Dr. Stanislaus diagnosed Appellant with pedophilia. She based this in part on the facts showing he molested three children each over a

period of time, and she found that several of his actions related to the abuse of each victim showed he has serious difficulty controlling his behavior and sexual urges. Dr. Stanislaus also assessed Appellant's risk for reoffending, which she based in part on actuarial tools. She used the Static–99, as well as its revised version, the Static–99R. She gave Appellant a score of three on both instruments, which is in the moderate low risk category. Dr. Stanislaus also evaluated Appellant's dynamic risk factors, which are individualized factors that can be identified in particular offenders. She found several risk factors present in Appellant, including deviate sexual interest, sexual preference for children, emotional identification with children, offense-supportive attitude, sexual preoccupation, and impulsivity. She concluded in this light that he was more likely than not to reoffend if not confined to a secure facility.

Appellant called Dr. Jeffrey Kline to testify, a forensic psychologist employed by the Department, who also evaluated Appellant. Dr. Kline reviewed Appellant's records but did not interview Appellant. He concluded Appellant did not have a mental abnormality as required under the definition of an SVP. Dr. Kline opined that Appellant had adult antisocial behavior. He said Appellant may have an antisocial personality disorder, but there was not enough information to prove it. Dr. Kline also considered the diagnosis of pedophilia, but he concluded there was not enough evidence to confirm Appellant was in fact sexually attracted to children, or that his behavior was driven by sexual urges or fantasies toward children. Dr. Kline testified that there are many reasons a person can engage in sexual behavior with children, and they are not necessarily due to pedophilia. Dr. Kline gave Appellant a score of four on the Static–99R, which is in the moderately high category of risk. Dr. Kline concluded that Appellant did not suffer from a mental abnormality that would make it difficult for him to control his behavior. Also, Dr. Kline saw no evidence that he reoffended while on parole, though he acknowledged the presence of some risk factors such as unstable employment history. Dr. Kline concluded he did not believe that Appellant was more likely than not to reoffend if not confined to a secure facility.

Dr. Luis Rosell, a clinical and forensic psychologist, was the final expert who testified on Appellant's behalf concerning his status as an SVP. He reviewed the records of Drs. Weitl, Stanislaus, and Kline. He also met with Appellant. Dr. Rosell found it noteworthy that when Appellant was released on parole, the State did not seek to have him committed as an SVP, and Appellant's parole was not revoked because of any evidence that he was interested in prepubescent children. Dr. Rosell also did not find that Appellant had pedophilia, and he agreed with Dr. Kline that there are many

5

other reasons why people may commit sex offenses against children. Dr. Rosell diagnosed Appellant with adult antisocial behavior. Dr. Rosell also used the Static–99R to assess Appellant's risk of reoffending. He gave Appellant a score of three if he had lived with a lover for over two years, and a four if that was not true. He concluded that Appellant did not suffer from a mental abnormality under the applicable definition, and he did not believe that Appellant was more likely than not to reoffend if not held in a secure facility.

Appellant testified that he had learned from his treatment in MOSOP and therapy while he was on parole. He reflected on the past abuse he had endured, and he learned about empathy and the effects of what he had done to his victims. He realized he had rationalized the abuse against Betty because her father was the one who had sexually abused him. He also believed the things he had done were not wrong at the time, but he knows they were wrong now. He testified regarding strategies he learned to stop himself before reoffending, and that he did not want to cause anyone more pain.

The jury found that Appellant was an SVP, and the probate court issued its judgment committing him to the custody of the Department for control, care, and treatment, until such time as Appellant's mental abnormality had so changed that he was safe to be at large.

(Doc. 12, Ex. 5 at 2-7); *In re Doyle*, 428 S.W.3d at 757–59.

Petitioner did not seek review by the Supreme Court of Missouri or by the Supreme Court of the United States. (Doc. 1 at 2). He timely filed his instant federal petition for a writ of habeas corpus.

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges two grounds for relief in this federal habeas action:

(1) The Circuit Court erroneously admitted the testimony of Dr. Angeline Stanislaus, a forensic psychiatrist, because she was employed by the Missouri State Department of Mental Health; Mo. Rev. Stat. § 632.489.4 allows respondent to offer the testimony of only privately retained psychiatrists.

(2) There was insufficient evidence to prove by clear and convincing evidence that he is a sexually violent predator, because the diagnoses of Drs. Kline, Stanislaus, and Weitl were inconsistent.

Respondent argues that these grounds are without merit.

### III. STANDARD OF REVIEW

Habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

"A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999) (quotation marks and citation omitted); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

A state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. *Whitehead*, 340 F.3d at 536.

# IV. DISCUSSION

## A. Ground One

Petitioner argues that the probate court abused its discretion by admitting the testimony of Dr. Stanislaus, an expert privately retained by the State who works in the facility where petitioner is housed. Petitioner asserts that Mo. Rev. Stat. § 632.489.4 limits what psychiatrists or psychologists can testify at his commitment hearing.

Under habeas review, to determine whether a state court committed error by admitting evidence, federal courts consider whether the state court's decision was an objectively unreasonable application of the Due Process Clause rather than whether the evidence was properly admitted under state law. *Middleton v. Roper*, 498 F.3d 812, 820 (8th Cir. 2007). Under the federal constitutional standard, petitioner must show that the asserted error of law was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir. 1987). To merit habeas relief, petitioner must also show a reasonable probability that his jury verdict would have been different absent the asserted error. *Id.*

Petitioner argues that Mo. Rev. Stat. § 632.489.4 explicitly grants him, but not the state, the right to obtain examinations by his or her expert of choice in an SVP commitment proceeding. Section 632.489.4 provides in relevant part:

> If the probable cause determination is made, the court shall direct that the person be transferred to an appropriate secure facility, including, but not limited to, a county jail, for an evaluation as to whether the person is a sexually violent predator . . . . The court shall direct the director of the department of mental health to have the person examined by a psychiatrist or psychologist . . . ***who was not a member of the multidisciplinary team that previously reviewed the person's records.*** In addition, such person may be examined by a consenting psychiatrist or psychologist of the person's choice at the person's own expense.

R. S. Mo. § 632.489.4 (2009) (emphasis added). Petitioner argues that Dr. Angeline Stanislaus was disqualified by this statute from testifying for the state in his trial, because she was employed by the state in the institution where he was sent. (Doc. 1 at 4). He

does not allege that Dr. Stanislaus was part of the multidisciplinary team that reviewed his case. (*Id.*)

Before the jury trial of his case, petitioner moved to exclude Dr. Stanislaus as a witness. Specifically, petitioner's counsel, Susan Elliott, renewed her motion in limine as follow:

> MS. ELLIOTT: I would renew my motion to prohibit the state from hiring a private psychiatrist or psychologist or from calling one to testify. Again, the Court has denied this, but I would point out -- and I don't think I put it in my original motion that the section of the sexually violent predator act that describes the process for a petition for release to be filed specifically says either the state or the respondent can hire a private psych -- you know, a psychologist of their own choice and at their own expense to evaluate the respondent, and the section that deals with the commitment of sexually violent predators doe not contain that wording. It does contain wording that says that either party can request a second opinion the Department of Mental Health, and then the Court would assess the cost of that to the party requesting it.
>
> * * *
>
> THE COURT: . . . [Y]ou are not asking to dismiss on those grounds, you just wanted to exclude the testimony because you believe the statute does not provide for private -- the private expert?
>
> MS. ELLIOTT: Correct.
>
> THE COURT: Okay. I am denying that motion.

(Doc. 12-1 at 28-31).

Dr. Stanislaus testified before the jury to the following. She is a licensed, board certified forensic psychiatrist. She is in private practice and part of her practice is to consult with the Missouri sex offender treatment center. In that consulting capacity she is part of a team of mental health providers who are social workers, psychologists, and nurses. This team provides treatment to sex offenders. She does this work part-time and works with the very specialized Social Rehabilitation Unit, also known as the SRU. (Doc. 12-1 at 230-33). She was contacted by the Missouri Attorney General's Office to review petitioner Doyle's records and render an opinion about whether he met the criteria

for civil commitment under Missouri's sexually violent predator law. She made that review and ultimately concluded that Doyle met these criteria. She explained to the jury why she made this conclusion. (*Id.* at 233-45). Later, Ms. Elliott renewed her objection to Dr. Stanislaus's testimony, stating, "she is not authorized by the statute, and so I would renew it at this point and also ask the Court to strike all of her testimony for the grounds stated in the motion." The trial judge overruled the objection. (*Id.* at 278-79).

On appeal, the Missouri Court of Appeals agreed, determining that the legislature intended that either party could hire experts because the statute states, "One examination shall be provided at no charge by the department. All costs of any subsequent evaluations shall be assessed to the party requesting the evaluation." *In re Doyle*, 428 S.W.3d at 760 (citing Mo. Rev. Stat. § 632.489). *See also Care and Treatment of Barlow v. State*, 250 S.W.3d 725, 732 (Mo. Ct. App. 2008) (*stating* the court could "find no authority for the proposition that it is wrong for the State to engage another expert to give an opinion consistent with the result it is seeking.").

Even assuming without deciding that admitting the opinion of Dr. Stanislaus into evidence before the jury was error, the error does not reach the constitutional egregiousness contemplated by the Eighth Circuit in *Hamilton v. Nix,* 809 F.2d at 470. The opinion of Dr. Weitl, the state's other expert, whom petitioner does not challenge, agreed with the opinion of Dr. Stanislaus. (Doc. 12-5 at 4). Drs. Stanislaus and Kimberly Weitl both testified that petitioner had pedophilia and was more likely than not to reoffend. (Doc. 12-5 at 4-5, 13-14).

Based in part on the facts showing he molested three children over a period of time, Dr. Stanislaus diagnosed petitioner with pedophilia. She also found that several of petitioner's actions towards his victims showed he has serious difficulty controlling his behavior and sexual urges. Dr. Stanislaus also assessed petitioner's risk for reoffending, which she based in part on actuarial tools. She scored petitioner in the moderate low risk category. Dr. Stanislaus also evaluated petitioner and found several risk factors present, including deviate sexual interest, sexual preference for children, emotional identification with children, offense-supportive attitude, sexual preoccupation, and impulsivity. She

concluded that he was more likely than not to reoffend if not confined to a secure facility. Dr. Stanislaus listed the following factors to support her opinion: petitioner continued molesting a victim immediately after being discovered, reoffended while on probation, and committed statutory rape against one victim while the state's investigation with another was open. (Doc. 12-1 at 282-318).

Dr. Kimberly Weitl also diagnosed petitioner with pedophilia. She considered petitioner's risk factors to include his specific behavior toward his victims and his actions going through treatment. In addition, Dr. Weitl used diagnostic tools in evaluating petitioner. Petitioner scored in a subcategory of high risk for reoffending. Dr. Weitl testified she believed petitioner was more likely than not to reengage in predatory acts of sexual violence if not confined to a secure facility. (Doc. 12-1 at 357-89). Therefore, the state's case rested on a substantial evidentiary basis even without the challenged testimony of Dr. Stanislaus.

Petitioner cross-examined the state's experts and presented his own experts to rebut the opinions of Drs. Stanislaus and Weitl. First, he called Dr. Jeffrey Kline, a forensic psychologist for the Department of Mental Health. Dr. Kline testified that he rejected a diagnosis of pedophilia because he concluded there was not enough evidence to confirm petitioner was sexually attracted to children or driven by sexual urges or fantasies toward children. Dr. Kline stated that there are many reasons a person can engage in sexual behavior with children, and they are not necessarily due to pedophilia. Using the same diagnostic tools as the state's experts, he concluded that petitioner did not suffer from a mental abnormality that would make it difficult for him to control his behavior. Dr. Kline also concluded he did not believe that petitioner was more likely than not to reoffend if not confined to a secure facility. (Doc. 12-1 at 413-51).

Petitioner also called Dr. Luis Rosell, a clinical and forensic psychologist. Dr. Rosell also considered and rejected a diagnosis of pedophilia. He agreed with Dr. Kline that there are many other reasons why people may commit sex offenses against children. Dr. Rosell instead diagnosed petitioner with adult antisocial behavior. Using the same tools as the other experts, he concluded that petitioner did not suffer from a mental

abnormality under the applicable definition, and he concluded that petitioner was not more likely than not to reoffend if not held in a secure facility. (Doc. 12-1 at 486-531).

After hearing all of the evidence, the jury reasonably found petitioner to be a sexually violent predator. The state court's factual findings are presumed to be correct in habeas corpus actions. 28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003). Petitioner has failed to "clearly and convincingly" rebut the correctness of the jury's findings. Petitioner has also failed to show a reasonable probability that, absent Dr. Stanislaus's opinion, the verdict would have been different.

Thus, the decisions of the Missouri Circuit Court and the Court of Appeals reasonably applied relevant federal law and reasonably determined the relevant facts.

Accordingly, Ground One is without merit.

**B. Ground Two**

Petitioner also argues that his civil commitment violates his federal Due Process rights, because the state's evidence was insufficient to "clearly and convincingly" prove that he is more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. Specifically, petitioner alleges that the state failed to establish that he had a mental abnormality because the experts' opinions were inconsistent.

A petitioner is entitled to habeas relief due to constitutionally insufficient evidence if the federal habeas court finds that no rational trier of fact could have found the relevant facts by the required burden of proof. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). As stated, in habeas corpus review, factual findings of the state court (here the findings of fact made by the Circuit Court jury) are presumed correct. 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *Hall v. Luebbers*, 341 F.3d 706, 712 (8th Cir. 2003).

The jury heard legally sufficient evidence that petitioner had a mental abnormality. Of the four experts who testified at trial, two testified that petitioner suffered from pedophilia. Drs. Weitl and Stanislaus testified that a person could meet the

diagnostic criteria for pedophilia if he or she engaged in sexual behaviors with a prepubescent child for a period of six months or more, while Drs. Klein and Rosell stated that there could be another reason for those behaviors. Based on the trial testimony, the jury reasonably determined that petitioner was a pedophile.

Legally sufficient evidence proved that petitioner was an SVP, because he was more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. Drs. Stanislaus and Weitl both clearly testified that petitioner was more likely than not to reoffend. Drs. Klein and Rosell offered contrary opinions. After hearing all of the evidence, the jury reasonably found petitioner to be a sexually violent predator. Petitioner has failed to "clearly and convincingly" rebut the correctness of this finding.

Petitioner has failed to rebut the jury's factual findings clearly and convincingly. The decisions of the state courts involve the reasonable application of federal law to a reasonable determination of the facts.

Ground Two is without merit.

## VII. CONCLUSION

For the reasons stated above, the petition of William E. Doyle for a writ of habeas corpus is denied. An appropriate Judgment Order is issued herewith.

Because petitioner did not make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. 28 U.S.C. § 2253(c).

      /s/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on October 20, 2017.